### MARIAH JACKSON v. THE STATE.

No. 3837. Decided November 24, 1915.

**Murder—Manslaughter—Justifiable Homicide—Charge of Court.**

Where, upon trial of murder and a conviction of manslaughter, the jury were authorized to believe from the testimony the words and acts of the deceased, defendant could reasonably conclude that it was the purpose and intent of the deceased to commit rape upon the defendant, if not murder or robbery, and that the killing took place after some act was done by the deceased, showing evidently an intent to commit such an affense, a failure to charge on justifiable homicide under article 1104, Penal Code, is reversible error.

Appeal from the District Court of Gonzales. Tried below before the Hon. M. Kennon.

Appeal from a conviction of manslaughter; penalty, two years confinement in the penitentiary.

The opinion states the case.

*Romberg & Duncan,* for appellant.—On question of justifiable homicide: Richardson v. State, 7 Texas Crim. App., 493; French v. State, 117 S. W. Rep., 848; Slack v. State, 149 S. W. Rep., 107.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, Presiding Judge.—Appellant was indicted for the murder of Mike Kanerek, tried and convicted of manslaughter.

The evidence was sufficient to require the court to submit both issues, murder and manslaughter; but submitted only those two issues.

The appellant objected to the charge of the court, because he failed and refused to submit the issue of justifiable homicide. In addition to objecting to the court's charge, he also requested some special charges submitting that issue, all of which the court refused.

It may be that the jury would not have acquitted appellant on that ground, but, in our opinion, the evidence was sufficient to require the court to submit the issue to the jury in a proper charge.

The evidence shows that the appellant was a woman living in a house in the country alone. She testified, in substance, that she was sitting alone in her house reading about half past nine o'clock at night, when someone at her gate, which was only four or five steps from her house, hollowed, "Hello." She made no response, when he twice again hollowed, "Hello!" She then went to her window, pulled aside the curtain at a broken pane and looked out through it; she saw a man standing at her gate. She asked him who he was and what he wanted. He did not tell her his name nor who he was. He first said he wanted to come in. That she thought it was a Mexican or maybe a negro; she did not know who. She told him that he was not coming in, and he said that he was; and that he made an attempt to come in; and, when he did so, she got a gun, poked it through the window pane and shot at him. She did not then know that she had hit or killed him. That, when she shot, she rushed out of the back door and went to a neighbor's in the neighborhood. She further testified that her front gate was fastened at the bottom with a wire. In addition, near the top was an ordinary wooden latch, and at the top she had it fastened by a bucket hoop over the post and a picket of the gate. That, when he said he was coming in, he took the bucket hoop and threw it aside. That he then stooped down, as she thought, to unfasten, and (from her standpoint) the inference was that he did unfasten, the gate at the bottom; and, as he raised up to come in, as she thought, she shot.

Our statute (P. C., art. 1104) says that homicide is permitted in the necessary defense of person or property under certain circumstances. The next article provides that it is permitted when inflicted for the purpose of preventing the offense of murder, rape, robbery and other felonies enumerated. In enumerating these circumstances, the first subdivision of this article states that it must reasonably appear by the acts, or words coupled with the acts, of the person killed that it was the purpose and intent of such person to commit one of the offenses above named; and the killing must take place where the person killed was in the act of committing the offense, or after some act done by him showing evidently an intent to commit such offense. We think that, from the testimony of the appellant herself, the jury were authorized to believe that, from the words and acts of the deceased, she could reasonably conclude it was his purpose and intent to commit rape upon

her, if not murder or robbery; and that the killing took place after some act done by him showing evidently an intent to commit such offense. Or, at least, that her evidence sufficiently raised the question so as to authorize and require the court to submit that issue to the jury for a finding.

No other question is raised requiring discussion. For the error of the court in refusing to submit the question of justifiable homicide under the statute and evidence, this case must be reversed and remanded.

*Reversed and remanded.*